ZACHARY, Judge.
 

 *119
 
 Plaintiff-Mother Eve Gyger appeals from the trial court's order denying her Rule 60 motions for relief from an order vacating the registration of her foreign support order. For the reasons explained below, we affirm the trial court's ruling.
 

 Factual and Procedural History
 

 Between 1997 and 1999, Plaintiff-Mother and Defendant-Father were involved in a romantic relationship while living in North Carolina. The parties had two children born
 
 *403
 
 in May 2000 in Geneva, Switzerland. On 24 October 2007, Plaintiff-Mother, through the children's guardian, initiated an action in the Court of First Instance, Third Chamber, Republic and Canton of Geneva against Defendant-Father to establish paternity and child support. Defendant-Father did not appear in person or through counsel. On 14 December 2009, the Swiss court entered judgment against Defendant-Father on both counts.
 

 In May 2014, the Swiss Central Authority for International Maintenance Matters, on behalf of Plaintiff-Mother and the minor children, applied to register and enforce the Swiss support order with the North Carolina Department of Health and Human Services, Office of Child Support Enforcement. The application and supporting documentation
 
 *120
 
 sent from Switzerland included a limited power of attorney authorizing the North Carolina Child Support Enforcement Agency, as the central authority of the debtor's country of residence,
 

 to represent the [Plaintiff-Mother] in dealings with all authorities and before all courts, to accept payments, to bring or respond to civil and criminal proceedings, to make use of any legal remedies, to reach settlements, and to waive or acknowledge claims. [The North Carolina Child Support Enforcement] Agency is authorised to grant substitute powers of attorney to other authorities or persons.
 

 The application also included copies of court documents written in French, the official language of the Swiss court, as well as English translations certified by a Swiss court translator.
 

 The Guilford County Clerk of Court registered the Swiss support order for enforcement on 13 June 2016. Defendant-Father was served with a Notice of Registration of Foreign Support Order on 20 June 2016, and on 1 July 2016, Defendant-Father timely filed a Request for Hearing to "vacate the registration, to contest the remedies being sought or the amount of the alleged arrears pursuant to N.C. Gen. Stat. § 52C-6-607." The IV-D Attorney
 
 [1]
 
 for the Guilford County Child Support Enforcement Agency notified Plaintiff-Mother of the hearing with a notice for "Hearing to Register Foreign Support Order" mailed on 14 July 2016, care of the Swiss Central Authority for Maintenance Matters Section for Private International Law at its address in Bern, Switzerland.
 

 On 2 September 2016, a hearing was conducted in Guilford County District Court before the Honorable Lawrence McSwain. The trial court vacated the registration of the foreign support order pursuant to N.C. Gen. Stat. §§ 52C-6-607(a)(1) and 52C-7-706(b)(3) and dismissed the action, finding that the court file lacked any evidence that Defendant-Father had been provided with proper notice of the proceedings in Switzerland and an opportunity to be heard, and further, that Defendant did not submit to the jurisdiction of Switzerland.
 

 On 26 July 2017, Plaintiff-Mother filed a Motion for Relief from the trial court's order pursuant to
 
 *121
 
 N.C. Gen. Stat. § 1A-1, Rules 60(b)(1), (2), (4), and (6), and thereafter filed two amended motions.
 
 [2]
 
 The trial court conducted a hearing on Plaintiff-Mother's 60(b) motions on 6 October 2017. Plaintiff-Mother did not appear at the hearing, but attempted through counsel to introduce two affidavits and the transcript of a deposition of Defendant-Father. The trial court admitted the deposition and transcript into evidence, but excluded the affidavits. The trial court excluded the first affidavit, an "Affidavit of Eve Gyger" purportedly signed by Plaintiff-Mother, because it was not notarized, and Plaintiff-Mother
 
 *404
 
 was not present to be examined. The second affidavit, an "Affidavit of Translation" containing English translations by a French translator professing to demonstrate that certain translations of the Swiss court's file were erroneous, was not admitted because the translator was not present in court and a third-party translation may not be substituted for the original translation provided by the Swiss court. In addition, Leilani Morange, Plaintiff-Mother's caseworker with the Guilford County Child Support Enforcement Agency, testified that it was her office's procedure to send all correspondence to plaintiffs in interstate and international child support enforcement cases to the agency that initiated the action on behalf of the plaintiff.
 

 By orders entered 30 November 2017 and 2 January 2018, the trial court denied Plaintiff-Mother's motions for relief from judgment under Rules 60(b)(1), (2), (4), and (6). Plaintiff-Mother timely appealed.
 

 Background
 

 In order to simplify and streamline the procedures by which,
 
 inter alia
 
 , a child support order rendered in another jurisdiction could be enforced, the General Assembly adopted the Uniform Interstate Family Support Act.
 
 See
 

 42 U.S.C. § 666
 
 (2017) ; N.C. Gen. Stat. §§ 52C-1-100 to 52C-9-902 (2017). A support order is:
 

 a judgment, decree, order, decision, or directive, whether temporary, final, or subject to modification, issued in a state or a foreign country for the benefit of a child, a spouse, or a former spouse, which provides for monetary support, health care, arrearages, retroactive support, or
 
 *122
 
 reimbursement for financial assistance provided to an individual obligee in place of child support.
 

 Id.
 

 § 52C-1-101(21). "A support order ... issued in another state or a foreign support order may be registered in this State for enforcement."
 

 Id.
 

 § 52C-6-601. A foreign support order is a support order of a foreign tribunal authorized to issue such orders.
 
 See
 
 id.
 

 § 52C-1-101(3b), (3c). A foreign country "means a country, including a political subdivision thereof, other than the United States, that authorizes the issuance of support orders and ... has been declared under the law of the United States to be a foreign reciprocating country."
 

 Id.
 

 § 52C-1-101(3a)(a). Federal law allows the United States Secretaries of State and Health and Human Services to declare any foreign country to be a foreign reciprocating country "if the foreign country has established, or undertakes to establish, procedures for the establishment and enforcement of duties of support owed to obligees who are residents of the United States," provided that such procedures conform with standards prescribed by law. 42 U.S.C. § 659a(a)(1) (2017).
 

 On 31 August 2004, a child support reciprocity agreement between Switzerland and the United States was entered into and Switzerland was declared a foreign reciprocating country.
 
 See
 
 Agreement Between the Government of the United States of America and the Government of the Swiss Confederation for the Enforcement of Maintenance (Support) Obligations, Switz.-U.S, Aug. 31, 2004, T.I.A.S. No. 04-930.1, [https://perma.cc/C8TX-K8SU]. Regarding recognition and enforcement of maintenance decisions, the agreement states:
 

 1. Maintenance decisions, including maintenance decisions arising from a determination of parentage, from the Requesting Party [here, Switzerland] shall be recognized and enforced in the Requested Party [here, North Carolina] to the extent that the facts in the case support recognition and enforcement under the applicable laws and procedures of the Requested Party.
 

 2. Maintenance decisions made after the failure of the respondent to appear shall be considered as decisions under paragraph 1 if it is demonstrated that notice had been given and the opportunity to be heard had been satisfied in a way to satisfy the standards of [North Carolina].
 

 Id.
 

 art. 7. The agreement requires that the "Requesting Party," in this case Switzerland, transmit the application for enforcement with the requisite supporting documentation, including the decision of the local tribunal,
 
 *123
 
 to the North Carolina Child Support Enforcement Agency as the responsible public body of the Department of Health and Human Services, Office of Child Support Enforcement.
 
 See
 
 id.
 

 art. 4, cl. 3. However, for a
 
 *405
 
 foreign decision or order to be recognized and enforced, the application shall include "evidence that the respondent has appeared in the proceedings or has been given notice and an opportunity to appear."
 

 Id.
 

 art. 4, cl. 5(b).
 

 Once a requesting party registers a foreign support order for enforcement pursuant to N.C. Gen. Stat. § 52C-6-602, the non-registering party, the individual from whom support is being sought, must be notified of the registration of the support order and informed of the opportunity to contest the validity or enforcement of the order within twenty days after receiving notice.
 

 Id.
 

 § 52C-6-605. "A party contesting the validity or enforcement of a registered support order or seeking to vacate the registration has the burden of proving" at least one of several enumerated defenses, including that "[t]he issuing tribunal lacked personal jurisdiction over the contesting party."
 

 Id.
 

 § 52C-6-607(a)(1).
 

 Rule 60(b) Motions for Relief from Judgment
 

 Described as "a grand reservoir of equitable power to do justice in a particular case,"
 
 Sloan v. Sloan
 
 ,
 
 151 N.C. App. 399
 
 , 404,
 
 566 S.E.2d 97
 
 , 101 (2002), Rule 60(b) provides that "[o]n motion and upon such terms as are just, the court may relieve a party ... from a final ... order ... for the following reasons: (1) [m]istake, inadvertence, surprise, or excusable neglect; ... (4) [t]he judgment is void; [or] (6) [a]ny other reason justifying relief from the operation of the judgment." N.C. Gen. Stat. § 1A-1, Rules 60(b)(1), (4), (6) (2017). "The purpose of Rule 60(b) is to strike a proper balance between the conflicting principles of finality and relief from unjust judgments. Generally, the rule is liberally construed."
 
 Harris v. Harris
 
 ,
 
 162 N.C. App. 511
 
 , 513,
 
 591 S.E.2d 560
 
 , 561 (2004).
 

 A Rule 60(b) motion "is addressed to the sound discretion of the trial court, and will be disturbed on appeal only upon a showing of an abuse of that discretion. The trial court's findings of fact are conclusive on appeal if there is any competent evidence in the record to support them."
 
 Brown v. Cavit Sci., Inc.
 
 ,
 
 230 N.C. App. 460
 
 , 463,
 
 749 S.E.2d 904
 
 , 907 (2013) (citation omitted). "An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision."
 
 Chicora Country Club, Inc. v. Town of Erwin
 
 ,
 
 128 N.C. App. 101
 
 , 109,
 
 493 S.E.2d 797
 
 , 802 (1997) (internal quotation marks omitted). However, motions pursuant to Rule 60(b) may not be used as a substitute for appeal to correct errors of law.
 

 *124
 

 Davis v. Davis
 
 ,
 
 360 N.C. 518
 
 , 523,
 
 631 S.E.2d 114
 
 , 118 (2006). In addition, our Supreme Court has directed that the discretionary ruling of a lower court should not be disturbed on appeal unless it "probably amounted to a substantial miscarriage of justice."
 
 Worthington v. Bynum
 
 ,
 
 305 N.C. 478
 
 , 487,
 
 290 S.E.2d 599
 
 , 605 (1982).
 

 "Although the decision to set aside a judgment under Rule 60(b)(1) is a matter within the trial court's discretion, what constitutes excusable neglect is a question of law which is fully reviewable on appeal."
 
 In re Hall
 
 ,
 
 89 N.C. App. 685
 
 , 687,
 
 366 S.E.2d 882
 
 , 884 (citation and internal quotation marks omitted),
 
 disc. review denied
 
 ,
 
 322 N.C. 835
 
 ,
 
 371 S.E.2d 277
 
 (1988). "A Rule 60(b)(1) motion must be made within a reasonable time, and the movant must show both the existence of one of the stated grounds for relief, and a meritorious defense."
 
 Id.
 
 at 686,
 
 366 S.E.2d at 884
 
 (citation and internal quotation marks omitted).
 

 Discussion
 

 I. Rule 60(b)(1)
 

 Plaintiff-Mother argues that the trial court erred in denying her motion for relief from judgment pursuant to Rule 60(b)(1) because the trial court: 1) refused to admit the "Affidavit of Eve Gyger," 2) refused to admit the "Affidavit of Translation," and 3) proceeded with the hearing despite the lack of proper notice to Plaintiff-Mother. These arguments are without merit, and we address each in turn.
 

 1. Affidavit of Eve Gyger
 

 Although Plaintiff-Mother failed to attend the Rule 60(b) hearing, she attempted through counsel to introduce an affidavit that was not notarized, but purportedly bore her
 
 *406
 
 signature. Attached to the affidavit were other documents, including third-party statements and documents that Plaintiff-Mother allegedly obtained from the Swiss court. Plaintiff-Mother contended that these documents were excluded from the record submitted by the Swiss authorities, which constituted mistake and excusable neglect. The trial court refused to admit the affidavit and attached documents into evidence because the "Plaintiff's signature was not notarized and she was not present in Court to be examined."
 

 On appeal, Plaintiff-Mother argues that the affidavit should have been admitted pursuant to N.C. Gen. Stat. § 52C-3-315(b) (2017), which states that "[a]n affidavit ... which would not be excluded under the hearsay rule if given in person, is admissible in evidence if given under penalty of perjury by a party or witness residing outside this State." Plaintiff-Mother's argument is unavailing.
 

 *125
 
 An affidavit is "[a] voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths."
 
 Affidavit
 
 ,
 
 Black's Law Dictionary
 
 (8th ed. 2004). More than a century ago, our Supreme Court declared:
 

 The essential requisites [of an affidavit] are, apart from the title in some cases, that
 
 there shall be an oath administered by an officer authorized by law to administer it, and that what the affiant states under such oath shall be reduced to writing before such officer
 
 . The signing or subscribing of the name of the affiant to the writing is not generally essential to its validity; it is not, unless some statutory regulation requires it, as is sometimes the case.
 
 It must be certified by the officer before whom the oath was taken before it can be used for legal purposes; indeed, it is not complete or operative until this is done
 
 . The certificate, usually called the
 
 jurat
 
 , is essential, not as part of the affidavit, but as official evidence that the oath was taken before a proper officer. The object of such an instrument is to obtain the sworn statement of facts in writing of the affiant in such official and authoritative shape, as that it may be used for any lawful purpose, either in or out of courts of justice. The signature of the affiant can in no sense add to or give force to what is sworn, and what is sworn is made to appear authoritatively by the certificate of the officer.
 

 Alford v. McCormac
 
 ,
 
 90 N.C. 151
 
 , 152-53 (1884) (some emphases added).
 

 Because Plaintiff-Mother's purported affidavit was not notarized, it lacked proper certification and could not be used for legal purposes. Therefore, the trial court was correct to exclude it from evidence.
 

 2. Affidavit of Translation
 

 At the Rule 60(b) hearing, Plaintiff-Mother's counsel also attempted to introduce into evidence the affidavit of a private-party translator, who was not present to testify, to show alleged errors and discrepancies in the official English translation of the Swiss court documents. The trial court found that "Plaintiff cannot substitute a third party translation for the original translation provided by the Swiss authorities." The trial court further found that "the original translation supports the Order [denying registration of the foreign support order]."
 

 *126
 
 Plaintiff-Mother alleges error to the trial court's ruling in a one-paragraph argument in her brief, and cites no case law or other authorities to support her assertions. It is not the job of this Court to create an argument for an appellant.
 
 Viar v. N.C. Dep't of Transp.
 
 ,
 
 359 N.C. 400
 
 , 402,
 
 610 S.E.2d 360
 
 , 361,
 
 reh'g denied
 
 ,
 
 359 N.C. 643
 
 ,
 
 617 S.E.2d 662
 
 (2005) ; N.C.R. App. P 28(b)(6). Therefore, we will not address this argument.
 

 3. Notice of Hearing
 

 Plaintiff-Mother argues that the notice of hearing informing her of Defendant-Father's intention to contest the registration of the support order contained materially misleading information and violated Rule 5 of the North Carolina Rules of Civil Procedure, in that it was not sent to her last known address.
 

 Regarding materially misleading information, Plaintiff-Mother argues that the notice stated that a "hearing to register foreign
 
 *407
 
 support order" was scheduled for 2 September 2016. The support order had already been registered and the hearing was actually to "contest the validity or enforcement of a registered support order" as provided under N.C. Gen. Stat. § 52C-6-606. However, Plaintiff-Mother never raised this issue below and we will not address it for the first time on appeal.
 
 See
 

 State v. Haselden
 
 ,
 
 357 N.C. 1
 
 , 10,
 
 577 S.E.2d 594
 
 , 600 (2003) ("This Court will not consider arguments based upon matters not presented to or adjudicated by the trial court.").
 

 Concerning Plaintiff-Mother's contention that the notice of hearing was sent to the wrong location, the trial court found:
 

 Plaintiff contends the September 27, 2016 Order is void because she did not receive proper notice prior to the September 2, 2016 hearing.
 
 No credible evidence supports this contention
 
 . Defendant's evidence shows and the Court finds that the policy and procedures of the North Carolina Guilford County Child Support Enforcement agency in an interstate case are to send correspondence to a plaintiff to the same agency that initiated the action on behalf of the plaintiff. The Court further finds that Plaintiff signed a power of attorney to give the agency authority to work on Plaintiff's behalf to obtain child support for the minor children. A Notice of Hearing was sent to Plaintiff on July 12, 2016 to Eve Gyger c/o SZ Section for Private Int Law, Central Authority for Maintenance Matter, Bundesrain 20, Bern Switzerland. SZ Section for Private Int Law is the agency that initiated the action on behalf of the Plaintiff.
 

 *127
 
 ....
 

 Plaintiff received proper notice of the hearing scheduled for September 2, 2016. The September 27, 2016 Order of the Honorable Judge Lawrence McSwain is not void.
 

 (Emphasis added).
 

 Our statutes provide that "[i]f the party has no attorney of record, service shall be made upon the party ... [b]y mailing a copy to the party at the party's last known address or, if no address is known, by filing it with the clerk of court." N.C. Gen. Stat. § 1A-1, Rule 5(b)(2) b (2016). However, Plaintiff-Mother was not an unrepresented party. This action, as the trial court correctly noted, was initiated by the Swiss Central Authority, and Plaintiff-Mother executed a limited power of attorney granting the North Carolina Child Support Enforcement Agency the authority "to represent [her] in dealings with all authorities and before all courts[.]"
 
 [3]
 

 A IV-D agent of the Guilford County Child Support Enforcement Agency testified that it was her office's policy in international child support cases to send all communications and correspondence directly to the agency initiating the support request. The IV-D attorney informed Plaintiff-Mother, in accordance with federal and state agency policy, of the scheduled hearing to contest the registration of the foreign support order by mailing the notice of hearing to the Swiss Central Authority in Bern, Switzerland.
 
 See
 
 A Caseworker's Guide to Processing Cases with Switzerland, Office of Child Support Enforcement, 8 (2009), [https://perma.cc/VK97-4XBC] ("All correspondence to Switzerland must be sent to the Swiss Central Authority in Bern[ ]...."); Child Support Services Manual: Intergovernmental, N.C. Dep't of Health and Human Serv., 41, [https://perma.cc/W96L-8L3N] ("When a hearing [contesting the registration of a foreign support order] is scheduled, notice of the date, time, and location of the hearing must be provided to the initiating state immediately.").
 

 "Correspondence" is the "[i]nterchange of written communications."
 
 Correspondence
 
 ,
 
 Black's Law Dictionary
 
 (5th ed. 1979). Plaintiff's counsel argues that this "correspondence" should have been served directly on the party in accordance with Rule 5 of the Rules of Civil Procedure,
 
 *128
 
 which provides for service upon an unrepresented party by delivering or mailing a copy to the party.
 
 *408
 
 N.C. Gen. Stat. § 1A-1, Rule 5(b)(2). In this case, we are bound to follow federal law.
 

 The governments of the United States and Switzerland entered into a treaty concerning the registration and enforcement of foreign support orders between our two countries. A treaty is federal law and "equivalent to an act of [Congress]."
 
 Foster v. Neilson,
 

 27 U.S. 2
 
 Pet. 253, 314,
 
 7 L.Ed. 415
 
 , 436 (1829),
 
 overruled on other grounds by
 

 United States v. Percheman
 
 ,
 
 32 U.S. 7
 
 Pet. 51,
 
 8 L.Ed. 604
 
 (1833)
 
 .
 
 Federal law is "the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Whenever state and federal law conflict, "state law is naturally preempted to the extent of any conflict with a federal statute."
 
 Crosby v. Nat'l Foreign Trade Council
 
 ,
 
 530 U.S. 363
 
 , 372,
 
 120 S.Ct. 2288
 
 , 2294,
 
 147 L.Ed.2d 352
 
 , 361 (2000).
 

 North Carolina is bound to follow the Agreement between the United States and Switzerland. The Agreement provides that documents should be sent to the "Central Authority or other designated public body" of each party.
 
 See
 
 Agreement, art. 4, cl. 3. Both the U.S. Office of Child Support Enforcement and the North Carolina Department of Health and Human Services provide that correspondence in international foreign support cases should be sent to the respective country or state agency, not sent directly to the individual parties. Accordingly, the trial court did not abuse its discretion in making the determination that the notice of hearing was sent to the correct location, and that Plaintiff received proper notice, and thus we affirm that finding.
 

 II. Rule 60(b)(4)
 

 Next, Plaintiff-Mother argues that her Rule 60(b)(4) motion was erroneously denied because the order vacating the registration of the foreign support order was void for failure to comply with the requirements of N.C. Gen. Stat. § 52C-6-606(c) (2017). Plaintiff-Mother argues this error divested jurisdiction from the trial court that granted the order vacating the registration of the foreign support order. However, Plaintiff-Mother never raised this argument before the trial court, a fact she concedes in her reply brief to this Court. Nevertheless, given that questions concerning subject matter jurisdiction may properly be raised for the first time on appeal,
 
 Federated Fin. Corp. of Am. v. Jenkins
 
 ,
 
 215 N.C. App. 330
 
 , 334,
 
 719 S.E.2d 48
 
 , 51 (2011), we will address Plaintiff-Mother's argument.
 

 *129
 
 A trial court may only grant a Rule 60(b)(4) motion where the underlying judgment is void.
 
 Burton v. Blanton
 
 ,
 
 107 N.C. App. 615
 
 , 616,
 
 421 S.E.2d 381
 
 , 382 (1992). "A judgment will not be deemed void merely for an error in law, fact, or procedure. A judgment is void only when the issuing court has no jurisdiction over the parties or subject matter in question or has no authority to render the judgment entered."
 

 Id.
 

 The district courts of North Carolina are granted jurisdiction over matters proceeding under the Uniform Interstate Family Support Act.
 
 See
 
 N.C. Gen. Stat. § 52C-1-102 (2017).
 

 Here, it is evident that the trial court possessed jurisdiction by statute. Accordingly, the trial court did not err in denying Plaintiff-Mother's Rule 60(b)(4) motion.
 

 III. Rule 60(b)(6)
 

 Finally, Plaintiff-Mother argues that her Rule 60(b)(6) motion was erroneously denied because Plaintiff-Mother never received notice of the hearing to contest the registration order, rendering the trial court's order vacating the registration of her foreign support order inequitable. We disagree.
 

 A trial court cannot set aside a judgment or order pursuant to Rule 60(b)(6) without a showing: (1) that extraordinary circumstances exist, and (2) that justice demands relief.
 
 Howell v. Howell
 
 ,
 
 321 N.C. 87
 
 , 91,
 
 361 S.E.2d 585
 
 , 588 (1987). The determination of whether to grant relief under Rule 60(b)(6) is equitable in nature and within the trial court's discretion.
 
 Kennedy v. Starr
 
 ,
 
 62 N.C. App. 182
 
 , 186,
 
 302 S.E.2d 497
 
 , 499-500,
 
 disc. review denied
 
 ,
 
 309 N.C. 321
 
 ,
 
 307 S.E.2d 164
 
 (1983).
 

 As discussed above, Plaintiff-Mother executed a limited power of attorney granting
 
 *409
 
 the North Carolina Child Support Enforcement Agency the authority "to represent [her] in dealings with all authorities and before all courts." The Guilford County Child Support Enforcement Agency followed established federal and state agency procedure in sending notice to parties in an interstate case. Thus, competent evidence exists in the record to support the trial court's discretionary ruling denying Plaintiff-Mother's Rule 60(b)(6) motion. Further, Plaintiff-Mother failed to show that extraordinary circumstances exist or that justice demands relief, and Plaintiff-Mother lacks a meritorious defense in that neither of the affidavits were admissible into evidence. Accordingly, the trial court did not err by denying Plaintiff-Mother's Rule 60(b)(6) motion.
 
 *130
 

 Conclusion
 

 The trial court did not err in denying Plaintiff-Mother's Rule 60(b) motions for relief from the order vacating the registration of her foreign support order. Therefore, we affirm the trial court's ruling.
 

 AFFIRMED.
 

 Judge STROUD concurs.
 

 Judge MURPHY concurs in result only.
 

 [1]
 

 The IV-D attorney represents the interests of the people of the State of North Carolina in court proceedings regarding,
 
 inter alia
 
 , the establishment of paternity as well as the establishment and enforcement of child support obligations, and provides service under Title IV-D of the Social Security Act.
 
 See
 

 42 U.S.C. §§ 651
 
 -69b (2016).
 

 [2]
 

 The Second Amended Motion for Relief from Final Order, the only motion for relief contained in the record on appeal, listed in its caption bases for relief under Rules 60(b)(2), (4), and (6). However, in the body of the motion, Appellant argued Rule 60(b)(1) but not Rule 60(b)(2). The trial court addressed Rules 60(b)(1) and (2) in its order. Appellant's brief to this Court addressed only Rules 60(b)(1),(4), and (6). As a result, Appellant abandoned any appeal based on Rule 60(b)(2).
 
 See
 
 N.C.R. App. P. 28(a) ("Issues not presented and discussed in a party's brief are deemed abandoned.").
 

 [3]
 

 While Plaintiff-Mother was not an unrepresented party, we note, "[n]o attorney/client relationship shall be considered to have been created between the attorney who represents the child support enforcement agency and any person by virtue of the action of the attorney in providing the services required."
 
 N.C. Gen. Stat. § 110-130.1
 
 (c) (2016).