IN THE SUPREME COURT OF NORTH CAROLINA

No. 31PA19

Filed 14 August 2020

EVE GYGER, Plaintiff

v.

QUINTIN CLEMENT, Defendant

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 823 S.E.2d 400 (N.C. Ct. App. 2018), upholding a denial of plaintiff's Rule 60(b) motion for relief from an order vacating the registration of her foreign support order entered on 30 November 2017 and 2 January 2018 by Judge Lora C. Cubbage in District Court, Guilford County. Heard in the Supreme Court on 17 June 2020.

*George Daly and Anna Daly for plaintiff-appellant.*

*D. Martin Warf for defendant-appellee.*

NEWBY, Justice.

In this case we decide whether an affidavit under N.C.G.S. § 52C-3-315(b) (2019), which applies to child support cases involving parties residing out of state, must be notarized. Notaries, as defined by our legal system, may not be readily accessible in all parts of the world. In recognition of the hardship that may result from the traditional notary requirement, the General Assembly created special evidentiary rules provided in Chapter 52C, the "Uniform Interstate Family Support

Act" (UIFSA) to permit affidavits in some circumstances to be admitted into evidence without notary acknowledgement if they were sworn to under penalty of perjury. Here, for an international party in a child support action, the party's signature on the affidavit under penalty of perjury suffices. No notarization is required under subsection 52C-3-315(b). The decision of the Court of Appeals is reversed.

Between 1997 and 1999, plaintiff-mother Eve Gyger and defendant-father Quintin Clement were involved in a romantic relationship in North Carolina. In 2000, the parties had two children who were born in Geneva, Switzerland. In October 2007, plaintiff initiated an action in the Court of First Instance, Third Chamber, Republic and Canton of Geneva against defendant to establish paternity and child support. Defendant did not appear, and the Swiss court entered judgment against defendant on both counts.

In May 2014, the Swiss Central Authority for International Maintenance Matters applied to register and enforce the Swiss support order with the North Carolina Department of Health and Human Services, Office of Child Support and Enforcement. The Guilford County Clerk of Court registered the Swiss support order for enforcement on 13 June 2016. Defendant was served with a Notice of Registration of Foreign Support Order on 20 June 2016. On 1 July 2016, defendant filed a Request for Hearing to, among other things, vacate the registration of the foreign support order. After a hearing in District Court, Guilford County, the trial court vacated the registration of the foreign support order under N.C.G.S. §§ 52C-6-607(a)(1) and

52C-7-706(b)(3) and dismissed the action, finding that the court file lacked any evidence that defendant had been provided with proper notice of the Swiss proceedings.

On 26 July 2017 plaintiff filed a Motion for Relief from the trial court's order under N.C.G.S. § 1A-1, Rules 60(b)(1), (2), (4), and (6). The trial court conducted a hearing on the motions, and plaintiff attempted to introduce two affidavits and a transcript. The trial court excluded the first affidavit, an "Affidavit of Eve Gyger" purportedly signed by plaintiff, because it was not notarized and plaintiff was not present to be examined.[1] The trial court ultimately denied plaintiff's motions for relief from judgment, and plaintiff timely appealed.

The Court of Appeals affirmed the trial court's ruling denying plaintiff's Rule 60(b) motions for relief from the order vacating the registration of her foreign support order. *Gyger v. Clement*, 263 N.C. App. 118, 130, 823 S.E.2d 400, 409 (2018). The court based its decision on this Court's ruling in *Alford v. McCormac*, 90 N.C. 151, 152–53 (1884), that an essential element of an affidavit is an oath administered by an officer authorized by law to administer it. *Gyger*, 263 N.C. App. at 125, 823 S.E.2d at 406. The Court of Appeals thereby interpreted N.C.G.S. § 52C-3-315(b) to require notarization for the affidavit to be admissible. *Id.* at 125, 823 S.E.2d at 406. Because plaintiff's purported affidavit was not notarized, the court concluded that it lacked

---

[1] The other affidavit, an "Affidavit of Translation," was excluded as well. It is not at issue before this Court.

proper certification and could not be used in this case. *Id.*

Plaintiff petitioned this Court for discretionary review, and this Court allowed review as to the issue of whether N.C.G.S. § 52C-3-315(b), which allows affidavits to be admitted into evidence if given under penalty of perjury, requires affidavits to be notarized.

We hold that the trial court erred by not admitting into evidence plaintiff's affidavit under N.C.G.S. § 52C-3-315(b). Generally, affidavits must be notarized. But the General Assembly, recognizing the challenges of interstate and international document production, created an exception for certain Chapter 52C cases.

Chapter 52C of the North Carolina General Statutes, the "Uniform Interstate Family Support Act," applies to situations involving child support with parties residing outside of this State. Within Chapter 52C the General Assembly chose to provide "Special Rules of Evidence and Procedure" to accommodate those special circumstances which arise when parties reside outside of North Carolina. N.C.G.S. § 52C-3-315(b). That subsection provides that

> [a]n affidavit, a document substantially complying with federally mandated forms, or a document incorporated by reference in any of them, which would not be excluded under the hearsay rule if given in person, is admissible in evidence if given under penalty of perjury by a party or witness residing outside this State.

N.C.G.S. § 52C-3-315(b).

Defendant argues that this provision continues to require affidavits filed under

it to be notarized. As with any question of statutory interpretation, the intent of the legislature controls. *Lenox, Inc. v. Tolson*, 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001). "The best indicia of that intent are the language of the statute[,] . . . the spirit of the act[,] and what the act seeks to accomplish." *Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs of Town of Nags Head*, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980).

Subsection 52C-3-315(b)'s plain terms do not require notarization. The provision instead simply requires an "affidavit" to be "given under penalty of perjury." Our case law, however, generally expects affidavits to be notarized if they are to be admissible. *See, e.g.*, *Alford v. McCormac*, 90 N.C. at 152–53.

Nevertheless, the General Assembly has the power to make exceptions to general rules for special circumstances as it sees fit. It did so with the provision relevant to this case. In 2015 the legislature expanded subsection 52C-3-315(b) from applying only to parties in other states to applying to parties outside of this State. *Compare* N.C.G.S. § 52C-3-315(b) (2013) (prior version of the statute applying to parties or witnesses "in another State") *with* N.C.G.S. § 52C-3-315(b) (2019) (current version of the statute applying to parties or witnesses "residing outside this State"). According to the Official Commentary, the purpose of this expansion was to extend its reach to an individual residing anywhere, including individuals residing outside of the United States. N.C.G.S. § 52C-3-315 (2019), Official Comment (2015). More specifically, the Official Commentary states that

> [s]ubsections (b) through (f) provide *special rules of evidence* designed to take into account the *virtually unique nature* of interstate proceedings under this act. These subsections provide exceptions to the otherwise guiding principle of UIFSA . . . . Because the out-of-state party, and that party's witnesses, necessarily do not ordinarily appear in person at the hearing, *deviation from the ordinary rules of evidence is justified in order to assure that the tribunal will have available to it the maximum amount of information on which to base its decision.*

*Id.* (emphases added).

When the legislature expanded the statute to apply to international residents, it recognized the difficulties that parties may face when dealing with child support claims in this State. Other nations have legal practices and traditions significantly different from those of our own, and thus in certain locations obtaining notarization of affidavits may be impractical or impossible. Notaries, as understood by the United States legal system, may not be as accessible in other parts of the world, so if notarization were required for affidavits involving international parties, many relevant and helpful materials likely would not be presentable before the court. Subsection 52C-3-315(b), as amended, allows the trial court to consider helpful evidence when it must decide child support issues involving nonresident parties.

Not surprisingly, then, subsection (b) is not the only place where the General Assembly made appropriate accommodations to address the special circumstances arising in child support cases involving out-of-state parties. Subsection 52C-3-315(f), for example, permits depositions of out-of-state parties and witnesses to simply be

taken "under penalty of perjury" by telephone or other electronic means.

Though the preceding analysis of legislative intent is sufficient to discern that the subsection at issue does not require notarization, additional evidence bolsters this conclusion. Since the statute substantially mirrors the 2008 Model UIFSA[2], *see* Uniform Interstate Family Support Act § 316 (2008), we may reference the commentary to the Model UIFSA for further evidence of statutory meaning. Though an oath was once required by the model statute, that requirement was removed in 2001. Unif. Interstate Fam. Support Act § 316 (2001). The comment to the 2001 Model UIFSA explains that the change "replaces the necessity of swearing to a document 'under oath' with the simpler requirement that the document be provided 'under penalty of perjury' . . . ." *Id.* at § 316 cmt. Thus, the uniform law provision on which subsection 52C-3-315(b) is based does not require an oath if the affidavit is submitted under penalty of perjury.

The legislature has the ability to explicitly require an oath if it deems it necessary, and it has done so in other provisions within Chapter 52C. For example, N.C.G.S. § 52C-3-311 (2019) provides that "an affidavit . . . under oath" is required when a party raises an issue of child endangerment. Thus, the lack of a specific oath requirement in subsection 52C-3-315(b) is significant evidence of legislative intent.

---

[2] The provisions of Chapter 52C closely reflect the corresponding Model UIFSA provisions. Section 316(b) of the UIFSA corresponds with the specific provision in question, subsection 52C-3-315(b).

Allowing affidavits into evidence in accordance with a proper interpretation of the statute here is not likely to harm trial court processes. An affidavit serves to convey information from the signing party in a form that attests to the statement's credibility. In 2004, *Black's Law Dictionary* defined an affidavit as "a voluntary declaration of fact written down and sworn to by the declarant before an officer authorized to administer oaths." *Affidavit, Black's Law Dictionary* (8th ed. 2004). Eventually, though, the definition was changed to "a voluntary declaration of fact written down and sworn by a declarant, *usu[ally]* before an officer authorized to administer oaths." *Affidavit, Black's Law Dictionary* (10th ed. 2014) (emphasis added). This change contemplates that affidavits may be valid and acceptable in some circumstances even when not sworn to in the presence of an authorized officer.

One such circumstance is when an affidavit is submitted under penalty of perjury. Affidavits without notarization may still be substantially credible. When a statement is given under penalty of perjury, it alerts the witness of the duty to tell the truth and the possible punishment that could result if she does not. "The form of the administration of the oath is immaterial, provided that it involves the mind of the witness, the bringing to bear [of the] apprehension of punishment [for untruthful testimony]." *United States v. Looper*, 419 F.2d 1405, 1406 (4th Cir. 1969).

Accordingly, in federal court proceedings too, written declarations made under penalty of perjury are permissible in lieu of a sworn affidavit subscribed to before a notary public. *See* 28 U.S.C § 1746 (stating that an unsworn declaration under

penalty of perjury has the same "force and effect" as an affidavit).

Because petitioner submitted her affidavit under penalty of perjury, she was made aware of her duty to tell the truth and of the possible punishment if she failed to do so. The document satisfied the requirements of subsection 52C-3-315(b). The trial court may accord whatever *weight* to plaintiff's statements it deems appropriate, but plaintiff's affidavit is at the very least admissible.

Asserting to the contrary, defendant and the Court of Appeals relied on cases which did not involve special rules of evidence due to special circumstances. None involved international parties or triggered the statutory provision applicable in this case. *See Alford*, 90 N.C. at 152–53 (holding that an affidavit verifying a complaint is not complete until it is certified by the officer before whom the oath was taken); *Ogburn v. Sterchi Bros. Stores*, 218 N.C. 507, 508, 11 S.E.2d 460, 461 (1940) (holding that a statement followed by an unsigned, unsealed, and unauthenticated statement was not an affidavit when seeking authorization to sue as a pauper); *In re Adoption of Baby Boy*, 233 N.C. App. 493, 500–02, 757 S.E.2d 343, 347–48 (2014) (holding that a critical part of an acknowledgement under oath was that the word "swear" was administered to the witness in the presence of a notary when relinquishing parental rights). Rather, each case involved affidavits used in more standard proceedings that do not implicate a special statutory procedure adopted by the General Assembly to address situations when parties reside out-of-state or out-of-country.

In recognition of the unique nature of these types of proceedings the General

Assembly enacted an exception to the usual notarization requirement, and for that reason subsection 52C-3-315(b) does not require that an affidavit given under penalty of perjury be notarized to be admissible. Plaintiff's affidavit is admissible because it was executed under penalty of perjury as allowed by subsection 52C-3-315(b). We therefore reverse the decision of the Court of Appeals and remand the case to that court with instructions to remand to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.